944 F.2d 906
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kimberly VAUGHN and Michael Vaughn, Plaintiffs-Appellants,
v.
CANNON U.S.A., INC., a Pennsylvania Corporation, and
Sheller-Globe, an Ohio Corporation, Defendants-Appellees.
 No. 90-2038.
 United States Court of Appeals, Sixth Circuit.
 Sept. 12, 1991.
 
 Before RYAN and BOGGS, Circuit Judges, and DOWD, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiffs Kimberly and Michael Vaughn appeal from the district court's grant of summary judgment in favor of defendant Cannon, U.S.A., Inc. and the court's subsequent denial of their motion to amend the judgment, pursuant to Fed.R.Civ.P. 60(b). The following issues are before the court:
 
 
 2
 1. Did the district court err in granting defendants' motion for summary judgment without holding a hearing;
 
 
 3
 2. Did the district court err in not notifying the Vaughns of its intent to rule on a question not clearly raised by Cannon;
 
 
 4
 3. Did the district court err in granting summary judgment; and
 
 
 5
 4. Did the district court abuse its discretion in denying the motion to amend?
 
 
 6
 Finding that the district court neither erred nor abused its discretion, we AFFIRM.
 
 I.
 
 7
 Cannon designed and manufactured the Reaction Injection Molding Machine ("RIM"). In 1983, Cannon sold RIM machines to Kimberly Vaughn's employer, Sheller-Globe, which it installed at Sheller-Globe's plant in Niles, Michigan.
 
 
 8
 Sheller-Globe used the RIM machine to produce urethane steering wheels through a reaction injection process. This process requires the injection of chemicals into a closed RIM. The chemicals react in a process called polymerization which produces urethane. During polymerization, the material in the mold expands. The excess urethane, called "buns" by the employees, escapes through vent holes in the upper clamp. Operators, such as Vaughn, remove the buns by opening the plastic shield on top of the upper mold, reaching over the mold, physically removing the buns, and spraying mold release into the area from which the buns are removed. After the buns are removed, the operator presses two buttons to close the press. The two buttons are a safety device to prevent the operator from putting a hand in the press as it closes.
 
 
 9
 The RIM machine operates either manually or automatically. In automatic mode, the mold opens automatically when polymerization is complete, approximately two minutes after the mold closed.
 
 
 10
 On May 3, 1988, Kimberly Vaughn was injured while spraying mold release. Her machine, pursuant to Sheller-Globe's instructions, was in automatic mode on the day in question. She testified that while she was leaning over the mold to spray, she felt the mold begin to raise. She stated that by "common reflex, when I felt the mold coming up, I twisted around to jerk back out of the way and it caught my elbow." She testified that because of the injury, she developed reflex sympathetic dystrophy.
 
 
 11
 The Vaughns filed suit against Cannon alleging defective design, failure to warn, breach of warranty, and negligence. Michael Vaughn, Kimberly Vaughn's husband, pled loss of consortium.
 
 
 12
 Cannon filed a motion for summary judgment contending that it had no duty to warn of obvious dangers, that there was no proximate cause between the absence of safety guards and Vaughn's injury, that they had no duty to protect Vaughn against the injury because of the insignificant risk, and that the product was manufactured according to applicable standards and specifications. The Vaughns filed a responsive brief opposing the motion. Cannon responded with a reply brief summarizing its position that the Vaughns had not established a prima facie case.
 
 
 13
 The district court granted Cannon's motion for summary judgment, finding that the Vaughns had failed to establish a prima facie case of product liability under Michigan law. The Vaughns then filed a motion to amend judgment and/or relieve plaintiffs of final judgment, pursuant to Fed.R.Civ.P. 52(b) and Fed.R.Civ.P. 60(b). The trial court denied these motions, finding that Rule 52 was inapplicable and that the Vaughns had not shown mistake, inadvertence, surprise or excusable neglect as required for relief under Rule 60(b).
 
 II.
 A.
 Failure to Hold Hearing
 
 14
 The Vaughns contend that the district court erred by failing to hold a hearing before granting summary judgment for Cannon. In their filings, neither party requested a hearing.
 
 
 15
 Fed.R.Civ.P. 78 provides in pertinent part:
 
 
 16
 To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition.
 
 
 17
 The Western District of Michigan has a rule providing for disposition without a hearing:
 
 
 18
 If counsel believe oral argument in support of or in opposition to any motion would be of assistance to the Court, the motion or response shall contain a concise statement setting forth the reasons why oral argument would be helpful.
 
 
 19
 (b) Disposition. The Court either upon request or upon its own motion may schedule oral argument, including the taking of testimony if appropriate, or it may proceed, after filing of a response to the motion, or upon the expiration of the said ten (10) days if no such response is filed, to dispose of the motion by the entry of an appropriate order.
 
 
 20
 W.D.Mich.R. 29. The Vaughns argue that despite this local rule, the district court erred because a hearing must be held on a motion for summary judgment. However, our decision in Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 391 (6th Cir.1975), upholding the validity of a similar local rule providing that summary judgment hearings would only be held when a party requested a hearing, indicates that our circuit allows district courts, pursuant to local rules, to decide summary judgment motions without hearings. The district court, therefore, did not err by ruling on the motion without a hearing where the parties did not request a hearing and the local rules permitted final disposition without a hearing in the absence of a request from the parties.
 
 B.
 
 21
 Failure to Notify Before Ruling on Issue Not Clearly Raised
 
 
 22
 The Vaughns allege that the Cannon motion for summary judgment did not raise the issue of "utility," the foreseeability, feasibility, and availability of alternative designs, and thus the court should not have based its grant of summary judgment on this argument without affording them an opportunity to show that a genuine issue of material fact existed regarding utility.
 
 
 23
 In its motion for summary judgment, Cannon raised four distinct grounds for granting its motion: (1) no duty to warn of obvious danger; (2) no proximate cause between failure to provide a safety guard and the injury sustained; (3) no duty to guard a machine to prevent its user from bumping an elbow when the machine opens; and (4) no manufacturer liability for an injury allegedly caused by a product manufactured in accordance with the purchaser's plans and specifications. The section of Cannon's motion papers devoted to the duty to provide safeguards against bumped elbows reads, in relevant part:
 
 
 24
 A prima facie case of a design defect premised upon the omission of a safety device requires first a showing of the magnitude of foreseeable risk, including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident. Reeves v. Cincinnati, Inc, 176 MichApp 181 (1989) [The basis of this motion is not a showing of alternative safety devices and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger.] Simply put: Do the facts give rise to a duty to guard against a bumped elbow and the sequelae thereof when the plaintiff places it in the point of operation of the machine?
 
 
 25
 (Emphasis in original.) The Vaughns responded to each of the grounds raised in separate sections of their brief. Cannon's reply brief, citing Owens v. Allis-Chalmers Corp., 414 Mich. 413, 326 N.W.2d 372 (1982), argued that to establish a prima facie case of design defect, a plaintiff should show an alternate design already in use, industry or governmental standards requiring a design's use, or testing demonstrating the reasonableness of the alternative. Attached to the reply brief was a Michigan Bar Journal article discussing the requirements of a prima facie case of defective design under Michigan law. The article noted the trend, expressed in Owens, toward a risk-utility approach requiring plaintiffs to offer proof of the magnitude of the risk of injury involved and the reasonableness of the proposed alternative designs. The district court granted summary judgment, stating:
 
 
 26
 Plaintiffs have failed to present evidence showing the magnitude of the foreseeable risks, including the likelihood of occurrence of the type of accident precipitating the need for safety devices. In the entirety of plaintiffs' proofs, there is no data or other factual evidence concerning the magnitude of the risks involved, the utility or relative safety of the proposed alternatives, or evidence otherwise concerning the "unreasonableness" of risks arising from the lack of a safety device to stop this machine from opening automatically.... Even reading the allegations of plaintiffs' complaint in the most favorable light, as I am required to do by the summary judgment standard, plaintiffs have failed to establish the existence of a design defect, an element for which they bear the burden of proof.
 
 
 27
 The district court further found that Cannon had raised the issue of failure to establish a prima facie case in its original brief:
 
 
 28
 Defendant's third point is that there should be no duty imposed to guard a machine to prevent its user from bumping an elbow when the machine opens. I believe defendant attempts in this section to employ the test so clearly laid out in Owens ... although its attempt is notably weak and it does not cite directly to Owens. However, I believe this is the crucial test in any defective design case and must be examined thoroughly and carefully.
 
 
 29
 In their motion to amend, the Vaughns alleged that "the reason Plaintiffs did not present more evidence related to the risk-utility balancing test is because Defendant never clearly claimed it was entitled to Summary Judgment on this basis." The district court, however, disagreed:
 
 
 30
 This argument is unfounded. The case of Owens ... which plaintiffs now recognize as "the seminal Michigan case in design defect cases" was referred to in an article attached to defendant's reply brief.... The fact that defendant did a poor job of arguing its motion for summary judgment does not excuse plaintiffs from their own failure to understand the factors needed to prove a design defect in Michigan. It is clear that plaintiffs' original strategy in this case failed. They cannot now seek to argue a new strategy before this Court under the guise of Rule 60.
 
 
 31
 The plaintiffs are correct that a district court should not sua sponte enter summary judgment on grounds not raised by the parties without giving the nonmovant notice and an opportunity to demonstrate the existence of a genuine issue of material fact relating to the new grounds for judgment. United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n, 873 F.2d 731 (4th Cir.1989); John Deere Co. v. American Nat'l Bank, 809 F.2d 1190 (5th Cir.1987). That, however, is not what happened here. Cannon argued in its motion for summary judgment that the Vaughns had not offered proof of a prima facie case because they had not established that the magnitude of the foreseeable risk required the installation of safety devices. Although the brief did not discuss the other element of a prima facie case, the reasonableness of the proposed alternative design, a lack of proof on one element would be sufficient for the court to grant the motion. Moreover, even the limited discussion by Cannon clearly showed that Cannon alleged that the Vaughns had not established a prima facie case under Michigan law. This argument became even clearer in the reply brief which explicitly discussed the requirements of the prima facie case, including the reasonableness of the alternative design, and to which was attached an article discussing these requirements. The Vaughns made no response to Cannon's reply brief which was filed on March 20, 1990, although no response was required. The district court did not grant the motion for summary judgment until May 10, 1990, thus giving the plaintiffs sufficient opportunity to respond to any issues discussed in the reply brief the Vaughns may have believed were new matters improperly raised.
 
 C.
 Denial of Summary Judgment
 
 32
 Under Michigan law,
 
 
 33
 a prima facie case of a design defect premised upon the omission of a safety device requires first a showing of the magnitude of foreseeable risks, including the likelihood of occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident. It secondly requires a showing of alternative safety devices and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger. This latter showing may entail an evaluation of the alternative design in terms of its additional utility as a safety measure and its trade-offs against the costs and effective use of the product.
 
 
 34
 Reeves v. Cincinnati, Inc., 176 Mich.App. 181, 187-88, 439 N.W.2d 326, 329 (1989). The district court granted summary judgment based on the plaintiffs' failure to make this showing. The court stated:
 
 
 35
 Plaintiff[s] ha[ve] submitted affidavits from various professionals which recommend that safety devices, such as those mentioned above, should be used on RIM machines. See, e.g., David Warner Deposition ("Dep."); Robert Smialek Dep. Mr. Smialek, a former electrical engineer with Cannon, listed in his deposition safety mats, light curtains, and pushbutton controls as the recommendations he would have made for safety devices at the time the RIM's were installed at Sheller-Globe's plant. He did not, however, specify which of these devices should have been used, nor did he provide any information on the effectiveness, the feasibility, and the cost involved in incorporating such a device into the RIM machine. Other than to state that "dual palm buttons ... have little or no added costs" plaintiffs have never provided any information about the foreseeability of the risk involved, nor about the feasibility and the cost for any of the alternative safety devices their witnesses testified about. They have not presented evidence concerning the availability of the specified safety devices at the time the machines were manufactured, nor employed in any way, the risk-utility balancing test discussed in Owens.
 
 
 36
 The plaintiffs concede that they offered no documentation regarding the risk-utility of alternative devices. Although they argue that they did not submit such documentation for good cause, the plaintiffs' failure to clearly raise the issue of risk-utility was a fatal deficiency in their prima facie case. As the court was presented with no evidence indicating that the plaintiffs could meet their burden on this issue, the district court did not err in granting summary judgment for the defendant.
 
 D.
 
 37
 Motion to Amend Judgment or Relieve Plaintiff from Judgment
 
 
 38
 After the entry of summary judgment for Cannon, the Vaughns filed a motion to amend and/or relieve plaintiffs from final judgment, pursuant to Fed.R.Civ.P. 60. This motion was accompanied by documentation, including affidavits and depositions, showing that plaintiffs could establish a prima facie case under Owens. Rule 60 provides in pertinent part:
 
 
 39
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment.
 
 
 40
 Fed.R.Civ.P. 60(b)(1), (6). The district court denied the motion because "[t]he fact that defendant did a poor job of arguing its motion for summary judgment does not excuse plaintiffs from their own failure to understand the factors needed to prove a design defect in Michigan."
 
 
 41
 "Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise." Federal's, Inc. v. Edmonton Inv. Co., 555 F.2d 577, 583 (6th Cir.1977). Courts, however, must recall that:
 
 
 42
 "Plaintiff's Rule 60(b) Motion must be equitably and liberally applied to achieve substantial justice. Doubt should be resolved in favor of a judicial decision of the merits of a case, and a technical error or a slight mistake by plaintiff's attorney should not deprive plaintiff of an opportunity to present the true merits of his claims. The countervailing factors are the defendants' and society's interests in the finality of judgments and the avoidance of prejudice."
 
 
 43
 In re Salem Mortgage Co., 791 F.2d 456, 459-60 (6th Cir.1986) (quoting Blois v. Friday, 612 F.2d 938, 940 (5th Cir.1980)). We review the denial of the motion for relief pursuant to Rule 60(b)(1) for abuse of discretion. Id. at 459. Relief under Rule 60(b)(6) is available only "in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294 (6th Cir.1989). The trial court's discretion in addressing a motion made under Rule 60(b)(6) "is 'especially broad' given the underlying equitable principles involved." Id.
 
 
 44
 The trial court here did not abuse its discretion in finding that the Vaughns did not establish mistake, inadvertence, surprise, or excusable neglect. As discussed above, Cannon's briefs gave the Vaughns notice that Cannon sought summary judgment based on the Vaughns' failure to offer proof of a prima facie case. A liberal application of Rule 60(b) is not mandated where counsel failed to carefully review pleadings, motions, or other documents filed with the court. In re Salem, 791 F.2d at 460. The plaintiffs' disregard of the Michigan law of design defects and their failure to offer adequate proof of such a case does not justify Rule 60 relief. 11 C. Wright & A. Miller, Federal Practice & Procedure § 2858; see also Crutcher v. Aetna Life Ins. Co., 746 F.2d 1076, 1083 (5th Cir.1984). Finally, the Vaughns may not base their motion on their failure to present all of the facts known to them that might have been useful to the court. 11 C. Wright & A. Miller § 2858; see also Brotherhood of Railway, Airline & Steamship Clerks v. St. Louis Southwestern Ry., 676 F.2d 132, 140 (5th Cir.1982).
 
 
 45
 In reviewing this issue, we do not substitute our discretionary judgment for the district court's. Our duty is limited to determining whether the district court abused its discretion in denying Rule 60(b)(6) relief. Although we cannot say that it did, we think the court certainly would not have abused its discretion had it granted the motion. Once the plaintiffs realized that utility was in fact an issue, they used the motion to reconsider to submit documentation which would have been adequate to resist defendant's motion for summary judgment. Because of the equitable and liberal aims of Rule 60, and because of our policy of resolving doubt in favor of a decision on the merits of the case, we believe that while the court did not abuse its discretion by denying the plaintiff's motion, it would have also been well within its discretion to have granted the motion.
 
 III.
 
 46
 As the district court did not err in its disposition of the summary judgment motion nor abuse its discretion in denying Rule 60 relief, we AFFIRM.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation