NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0119n.06

No. 09-4471

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 22, 2011
LEONARD GREEN, Clerk

LAURA J. ASBURY,

        Plaintiff-Appellant,

v.

LINDA TUCCI TEODOSIO;
ROBERT BICKETT; DAVID HORNER;
STEVEN STAHL; BRUCE ALEXANDER;
DELMAR COLEMAN, in their individual
and official capacities; SUMMIT COUNTY
COURT OF COMMON PLEAS,
JUVENILE DIVISION,

        Defendants-Appellees.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE:  SUHRHEINRICH, COLE and COOK, Circuit Judges.

        **SUHRHEINRICH, Circuit Judge.**  Plaintiff-Appellant Laura Asbury alleges that the district court erred in granting Defendants-Appellees summary judgment on her claims that she was terminated in retaliation for the exercise of her First Amendment rights. Asbury fails to demonstrate that her association or her speech were constitutionally protected and, consequently, she cannot make out a prima facie case for retaliation.  We **AFFIRM.**

## I.  BACKGROUND

### A. Facts

        Laura Asbury was an employee of Ohio's Summit County Juvenile Court ("SCJC") between 2000 and 2007.  During her tenure with SCJC, Asbury served as a part-time Detention Center Group

Counselor and then, following a 2003 promotion, as a full-time Detention Officer. Asbury's Detention Officer duties included supervising juveniles housed in the Detention Center and transporting juveniles to court hearings and medical appointments.

Long-standing SCJC policy prohibits contact between Detention Officers and released juveniles. In 2006, Judge Linda Tucci Teodosio, the Administrator of SCJC, became concerned over staff contact with released individuals and reinforced the no-contact policy. Despite this policy, Asbury maintained contact with juveniles following their release from the Detention Center. In addition to violating the no-contact policy, Asbury accumulated a lengthy disciplinary record during her tenure at SCJC, including repeated verbal and written disciplinary notices and two suspensions.

In 2007, SCJC scheduled a disciplinary conference with Asbury to address her contact with a released youth. The outcome of this conference was a letter, dated March 2, 2007, explaining SCJC's concerns that Asbury was unable to exercise appropriate boundaries with youth under her supervision. The letter warned Asbury that further behavior inappropriate to her position as a Detention Officer would result in her termination. On March 11, 2007, just days after receiving this letter, Asbury had a confrontation with her supervisor. On March 12, 2007, a Detention Center juvenile filed a grievance, alleging Asbury revealed the juvenile's confidential medical information to another Detention Center resident.

An internal investigation of these incidents resulted in SCJC scheduling a disciplinary conference with Asbury on March 19, 2007. Following this conference, Judge Teodosio reviewed the investigative report regarding Asbury's final two disciplinary incidents and Asbury's entire disciplinary record. Judge Teodosio decided to terminate Asbury, citing the most recent incidents as well as her long disciplinary history.

In April 2007, SCJC notified Asbury of her termination via letter, which stated that Asbury's final two disciplinary incidents, confronting a supervisor and disclosing medical information of a resident, were significant violations of SCJC policy. It went on to summarize her extensive disciplinary record and her receipt of the March 2 letter, warning her of termination. The termination letter concluded by saying that her recent actions left SCJC with no choice but to terminate her.

## B. Procedural History

In August 2008, Asbury filed this 42 U.S.C. § 1983 action, alleging wrongful termination against Judge Teodosio, five SCJC employees, and the Summit County Court of Common Pleas. Her complaint set forth thirteen counts. The two counts at issue here alleged retaliation for exercising her First Amendment rights.[1] One count alleged a freedom of association violation based on Asbury's interaction with released juveniles. The other count alleged freedom of speech violations based on Asbury's speech with released juveniles, her advice to a Detention Center juvenile regarding the juvenile's right to an attorney, and her communications to SCJC supervisors over the potential performance problems of other employees (Asbury terms these communications her "protests"). The "protests" in turn focused on: (1) improper admission procedures by another SCJC employee, (2) gambling by a teacher at the Detention Center, and (3) an employee whose person smelled of alcohol.

---

[1] Counts four and five presented in Asbury's amended complaint alleged retaliation for exercising her "right to free speech" and "right to free association," respectively, but did not tie specific conduct to either count. For ease of reference, we designate Asbury's freedom of association count as including her association with released juveniles and her freedom of speech count as including her speech with released juveniles, her advice to a detention center resident regarding legal representation, and her three "protests." Because the analytical framework is the same for freedom of association and freedom of speech claims, the distinction does not impact our result.

In April 2009, the parties stipulated to the dismissal of three SCJC employees, leaving Judge Teodosio, two other SCJC employees, and the county court as defendants (hereinafter "Court Defendants"). In August 2009, the Court Defendants filed for summary judgment. Two months later, the district court granted them summary judgment on each of the thirteen counts. Asbury appeals the district court's ruling only with respect to the two First Amendment retaliation counts.

## II. ANALYSIS

### A. Standard of Review

The Sixth Circuit reviews de novo a grant of summary judgment. *Wimbush v. Wyeth*, 619 F.3d 632, 636 (6th Cir. 2010). Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 635 (6th Cir. 2010). A court must view a motion for summary judgment in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Int'l Dairy Foods Ass'n*, 622 F.3d at 635 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

### B. Substantive Standards

"A government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004). However, the state's interests "as an employer in regulating the speech of its employees 'differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.'" *Connick v. Myers*, 461 U.S. 138, 140 (1983) (quoting *Pickering v. Bd. of*

*Educ.*, 391 U.S. 563, 568 (1968)). As a result, a governmental employer may impose restraints on an employee's speech that would be unconstitutional if applied to the public generally. *City of San Diego*, 543 U.S. at 80. To successfully make out a prima facie case for retaliation, "the employee must demonstrate that: (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two . . . ." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). This same framework also applies to First Amendment freedom of association claims. *Akers v. McGinnis*, 352 F.3d 1030, 1036 (6th Cir. 2003) (citations omitted) (reasoning that the "extensively developed" analytical tools for speech claims apply to other First Amendment retaliation claims).

Demonstrating constitutionally protected speech requires the plaintiff to make two threshold showings: first, that the speech involves a matter of public concern and second, that the speech occurred outside the duties of his or her employment. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008); *Miller v. City of Canton*, 319 F. App'x 411, 416 (6th Cir. 2009). Matters of public concern relate to political, social, or other concerns of the community. *Connick*, 461 U.S. at 146. As a result they are distinguishable from internal office politics where an individual speaks as an employee about matters of only personal interest. *Akers*, 352 F.3d at 1037 (quoting *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999)). We determine whether speech involves a matter of public concern by looking "to the content, form, and context of the statements in light of the record as a whole." *Id*. at 1038 (quoting *Jackson*, 168 F.3d at 910); *see also Connick*, 461 U.S.

at 147-48. Whether a public employee's speech or association is a matter of public concern is a question we review de novo. *Hughes*, 542 F.3d at 180.

If the plaintiff meets the two threshold showings, the court then balances the individual's interest in making the speech against the government's interest in restricting the speech in what is known as the *Pickering* balancing test. *Id*. (identifying the test the Supreme Court sets forth in *Pickering*, 391 U.S. at 568). *Pickering* balancing is essentially a form of intermediate scrutiny. *Akers*, 352 F.3d at 1037 (citing *Montgomery v. Carr*, 101 F.3d 1117, 1129 n.7 (6th Cir. 1996)).

Private speech that does not touch on matters of public concern imposes no special burden of justification on the government employer; it need only satisfy rational basis review. *Id*. (citing *Waters v. Churchill*, 511 U.S. 661, 671 (1994)); *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 466 (1995) (citing *Connick*, 461 U.S. at 148-49).

## C. Procedural Challenge

Asbury argues that the Court Defendants did not provide sufficient references to the record in support of their motion for summary judgment and that, as a result, the motion is procedurally defective. It is incumbent on the party seeking summary judgment to demonstrate the absence of a material issue of fact. *Am. Civil Liberties Union of Ohio Found., Inc. v. DeWeese*, --- F.3d ----, 2011 WL 309657, at *3 (6th Cir. 2011). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The movant need only demonstrate an absence of a genuine issue of material fact with regard to any one element

of the plaintiff's prima facie case. *See Celotex*, 477 U.S. at 322-23 (concluding that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

In their motion for summary judgment, the Court Defendants challenged the first and third elements of Asbury's retaliation claims. With respect to the association and speech claims based on her contact with released juveniles, the Court Defendants first disputed that Asbury's contact caused her termination. In support, they cited the March 2, 2007 letter that gave her a written warning for this behavior, but did not terminate her. Second, the Court Defendants disputed that her association and speech with released juveniles was constitutionally protected. In support, they cited to Judge Teodosio's deposition and the March 2, 2007 letter to establish the existence and purpose of the no-contact policy. The Court Defendants also pointed out that this Court previously held in *Akers* that similar association between detention center staff and individuals released from the detention center did not touch on matters of public concern. *See Akers*, 352 F.3d 1038-39 (concluding that the association was a "purely private matter" and that the policy preventing association easily satisfied rational basis review).

The Court Defendants also challenged the causation and public nature of the speech. As for Asbury's "protests," the Court Defendants cited *Connick* for the proposition that such types of intra-office criticism do not amount to a matter of public concern worthy of constitutional protection. *See Connick*, 461 U.S. at 149. The Court Defendants disputed that her speech caused her termination, citing Asbury's own deposition testimony to show that Asbury herself knew of no causal relationship between her "protests" and her firing. Additionally, the Court Defendants pointed to Asbury's extensive history of disciplinary action, beginning in 2002 and continuing until her termination in

2007, and referenced Judge Teodosio's deposition, Asbury's deposition, and SCJC documentation regarding disciplinary action taken against Asbury.

Clearly, the Court Defendants satisfied the requirements for summary judgment by informing the district court through citations to the pleadings and deposition testimony that there was no genuine issue of material fact as to whether Asbury was terminated in retaliation for exercising her First Amendment rights. Their motion for summary judgment was procedurally sufficient.

On appeal, Asbury also argues that the Court Defendants procedurally erred by raising new arguments in their reply brief to the district court. This argument is likewise without merit. Asbury, in her response to the motion for summary judgment, criticized the Court Defendants for insufficiently supporting their motion for summary judgment. While Asbury initially claimed the Court Defendants failed to address the essential elements of her retaliation claim, she went on to argue that they had not demonstrated why her association and speech claims were not a matter of public concern and that they had not shown that her speech and association were not the cause of her termination. In their reply brief, the Court Defendants responded to this criticism by further explaining the arguments presented in their motion: challenging that Asbury's association and speech with released juveniles were constitutionally protected, refuting any causal link between this association and speech and Asbury's termination, contesting that her other speech was a matter of public concern, and disputing any causal link between this speech and her termination.

The Court Defendants' reply brief does nothing more than reply to the allegations made in Asbury's response and elaborate on the arguments made in their original motion. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (explaining that "reply briefs *reply* to arguments made in the response brief" (internal quotation marks and citation omitted)); *see also Vaughn v.*

*Cannon U.S.A., Inc.*, No. 90-2038, 1991 WL 177970, at \*4 (6th Cir. Sept. 12, 1991) (permitting a movant's reply to elaborate and make "even clearer" an argument originally supported by only a limited discussion). Asbury's contention regarding the contents of the Court Defendants' reply brief is without merit.

### D. Substantive Challenge

Asbury also claims the district court improperly granted summary judgment because genuine issues of material fact remain with regard to whether her association and speech were constitutionally protected and whether there was a causal link to her termination.

### 1. Freedom of Association Claim[2]

Asbury claims that her association and speech with released juveniles are a matter of societal concern because she encouraged and supported the juveniles in an effort to help them become and remain law-abiding and productive members of society. In *Akers*, we explained that contact between staff and former residents of a correctional facility, while driven by understandable and even laudable motivations, is a "purely private matter[] of little or no concern to the community as a whole." *Akers*, 352 F.3d at 1038. Accordingly, per this Court's clearly established precedent, Asbury's association and speech with the released juveniles is a private matter that does not rise to the level of a matter of public concern and is not constitutionally protected.

As a non-public matter, SCJC need only satisfy rational basis review to justify its no-contact policy. The policy is designed for the protection of both SCJC and Detention Center juveniles: it protects against conflicts of interest and prevents any appearance of impropriety. The SCJC certainly

---

[2]As noted earlier, the basis for Asbury's freedom of association, her contact with released juveniles, also includes a freedom of speech claim.

has a legitimate interest in these goals and the no-contact policy is a rational means for advancing this interest. As such, the policy withstands a freedom of association and freedom of speech challenge.

### 2. Freedom of Speech Claims

#### a. Right to an Attorney

Asbury maintains that she "did the right thing" by telling a juvenile she had a right to an attorney.[3] Asbury's deposition testimony indicates that when a Detention Center juvenile returned from court, the young woman was visibly upset and claimed that she was to be sent to the Department of Youth Services ("DYS"). Asbury inquired whether the juvenile had an attorney present with her at court. When the juvenile stated that no attorney was present, Asbury advised her to write the presiding judicial official and request an attorney before her transfer to DYS.

Asbury never explains why this advice constituted a matter of public concern. In any event, this advice did not touch on a matter of public concern. By her own admission, all Asbury did was provide private advice with the aim of helping this juvenile change the outcome of a proceeding; her speech does not reflect any type of attempt to notify the public about a problem with the juvenile justice system.

---

[3]Asbury's amended complaint does not include any reference to this speech. Accordingly, the motion for summary judgment is silent on the issue. Asbury references this speech, albeit in a cursory manner, in both her response brief opposing summary judgment and her opening brief before this Court. The district court addressed this speech in its opinion, and so, we shall also consider it here.

### b.  "Protests"

#### i.  Admission Procedures

On appeal, Asbury maintains that her "protests . . . concern the community."  With respect to her "protest" over Detention Center admission procedures, Asbury's deposition testimony indicates that she complained at least in part to explain her March 11, 2007 confrontation with a supervisor for which she subsequently received discipline.  Asbury's "protest" was not to ensure the airing of a public concern, but rather to provide her side of the story before her supervisor learned of this incident of insubordination.  Asbury has failed to establish that  this speech was a matter of public concern.

#### ii.  Gambling Activity

Asbury's "protest" over alleged gambling activity by a teacher at the Detention Center is likewise tied to her own misconduct.  This teacher had previously notified SCJC supervisors of Asbury's inappropriate conduct in his classroom, which resulted in disciplinary action against Asbury.  Asbury's own notes[4] describing the circumstances surrounding this "protest" confirm the self-serving and retributive nature of her speech; her documentation stated that the alleged gambling activity merited discipline for the teacher.  It did not explain how the alleged conduct was of public concern.  In short, this "protest" was also exclusively self-serving and was not a matter of public concern.

---

[4]In her deposition testimony, Asbury explains that during her employment at the Detention Center she kept a notebook to document occurrences she considered "suspect."  At the time of her deposition, Asbury could not locate the notebook.  However, she provided typed summaries purportedly based on the contents of her notebook.  Her deposition testimony included these typed notes as exhibits.

-11-

### iii. Alcohol Use

Finally, regarding the "protest" over the employee whose person smelled of alcohol, Asbury's own deposition testimony indicates that she never actually protested a co-employee's use of alcohol. Instead, she merely inquired about *how* to make a complaint without formally filing one. During a subsequent disciplinary conference over her own conduct, Asbury ultimately raised this issue but, other than naming the individual, did not provide any other details (e.g. date, time, etc.) about the alleged incident. The context and form of this speech indicate that, rather than trying to raise an issue of public concern, Asbury again sought to deflect attention from her own misconduct. Furthermore, Asbury's statement was not that an employee was drinking on the job, which might rise to the level of a public concern, but rather that his breath, clothing, sweat, or skin smelled of alcohol. *Cf. Ohse v. Hughes*, 816 F.2d 1144, 1151 (7th Cir. 1987) (determining that speaking out about the drinking of alcohol by government employees during business hours, in addition to other conduct, constituted speech of a public concern), *vacated on other grounds* 485 U.S. 902 (1988).

In short, none of Asbury's "protests" were directed at informing the public about improper conduct at the Detention Center. Indeed, the "protests" were always precipitated by some disciplinary action for Asbury's own misconduct. Moreover, the form of her "protests," complaining to individual members of the Detention Center, further confirms that these "protests" were not matters of public concern. In *Connick*, the Supreme Court reasoned that a questionnaire distributed to other staff members was not an attempt "to inform the public" nor was it an attempt "to bring to light actual or potential wrongdoing or breach of public trust." 461 U.S. at 148. Asbury did even less than the employee in *Connick*, protesting to one or two people within the Detention Center. The content, context, and form of her "protests," thus, do little to support her contention that she spoke

of a matter of public concern. We think the warning in *Connick* is apposite here: "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case." *Id* at 149.

We will not constitutionalize Asbury's self-serving criticisms. Furthermore, because neither her association nor her speech is constitutionally protected, she cannot make out a prima facie case for retaliation and we need not reach the other elements of her claim.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the grant of summary judgment.