12 F.3d 214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Shirley ROSSER, et al., Plaintiffs-Appellants,
v.
PIPE FITTERS LOCAL 392, Robert Sullivan, Defendants-Appellees.
 No. 92-3016.
 United States Court of Appeals, Sixth Circuit.
 Dec. 2, 1993.
 
 Before: KEITH and KENNEDY, Circuit Judges; and JORDAN, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiffs-Appellants, 25 individual African-American members of Pipe Fitters Union Local No. 392, appeal a district court ruling for the Defendants-Appellees, Pipe Fitters Union Local No. 392 ("Local 392") and Robert Sullivan. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 This case involves claims of racial discrimination in a union's referral of pipe fitters to local construction contractors, and alleged discriminatory effects of a collective bargaining agreement.
 
 A.
 
 3
 Local 392 is a chartered local union affiliate of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada. Its principal place of business is Cincinnati, Ohio. Robert Sullivan, the business manager of Local 392, was first elected in 1972 and has maintained his position ever since.
 
 
 4
 The union, democratically controlled by its members, organizes and represents pipe fitters to obtain better insurance, benefits, wages and other improved conditions of employment. The union negotiates collective bargaining agreements with the Mechanical Contractors Association of Cincinnati ("MCA"), an employer association representing local contractors.
 
 
 5
 Pursuant to a Collective Bargaining Agreement ("CBA") with the MCA, Local 392 operates a hiring hall which refers unemployed pipe fitters to local contractors. The hiring hall is managed by Robert Sullivan and Local 392 business agents.
 
 
 6
 To receive an employment referral, an unemployed pipe fitter must complete a registration application on the Out-of-Work List ("OWL"). The OWL, recorded in ledger books under the direction of Sullivan, contains numerical, alphabetical, and color codes indicating workers' position on the OWL, special skills and benefits eligibility. The OWL referral system ensures that the first pipe fitter to register is the first pipe fitter referred to work. This first-in, first-out referral system is known as the "general-request" system.
 
 
 7
 Special exceptions to the general-request system exist, notably requests for pipe fitters with special skills ("special skills-request"), key persons to act as supervisors or forepersons ("key person-request") and particular pipe fitters by name ("name-request"). Thus, a contractor may make either a general-request, a special skills-request, a key person-request or a name-request. If a general-request is made, the first pipe fitter on the list is called for work. When a special skills-request is made, the union calls the first pipe fitter on the OWL with the necessary skills. If a key person-request is made, Local 392 refers supervisory personnel. If a contractor name-requests a pipe fitter, the union contacts the requested worker, and, if unemployed, refers him to the contractor. A pipe fitter must meet special qualifications to be name-requested. Specifically, a pipe fitter must attain "journeyperson" status, which requires one to have either worked for CBA contractors for 1200 hours per year for four consecutive years or to have completed the apprenticeship program.
 
 
 8
 The CBA's name-request provisions mandate that the union send the desired pipe fitter to the requesting contractor, and allows a contractor to request any journeyperson for any reason. Almost 80% of the contractor requests are name-requests.
 
 
 9
 In 1959, contractors insisted on the inclusion of name-request provisions in the CBA to enable them to select their work force, maintaining that the name-request provision was imperative to a productive and efficient work force. Local 392 accepted this provision in exchange for the exclusive right to provide pipe fitters to the contractors through its hiring hall. The name-request system benefits Local 392 members because they receive preference over transient pipe fitters, who are ineligible for the name-request system but remain eligible for job referral by the general-request provision of the CBA.
 
 B.
 
 10
 On November 12, 1982, discontinued construction on a local power plant created widespread unemployment among union members, and thus the OWL attained heightened importance.
 
 
 11
 In the years following the discontinued plant construction, the average African-American union member on the OWL worked less than the average white member. In September 1983, a group of African-Americans filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), charging that Local 392 referred its members, and contractors requested pipe fitters, in a racially discriminatory manner.
 
 
 12
 Following a two-year investigation, the EEOC found that Local 392 and the MCA had discriminated against African-American pipe fitters in violation of Title VII of the Civil Rights Act, 42 U.S.C. Sec. 2000e et seq. The EEOC determined that 97% of name-requests went to white members, and that African-Americans worked fewer hours than whites. In mid-1984, African-Americans averaged only 37% of the hours worked by whites. The EEOC determined that Local 392 discriminated by acquiescence in the discriminatory hiring practices of MCA contractors.
 
 
 13
 In November, 1984, the EEOC, the African-American pipe fitters, and the MCA agreed that one out of every five Local 392 members name-requested would be a minority member. While the defendant union did not participate in the settlement fostered by the EEOC, the practice of the hiring hall after the settlement was in accordance with the provision of the settlement which required that every fifth name-request by a contractor be an African-American pipe fitter.
 
 
 14
 On May 26, 1988, Appellants filed this action against Appellees Sullivan and Local 392 in the United States District Court for the Southern District of Ohio. Appellants alleged that Appellees violated Title VII, 42 U.S.C. Sec. 1981, and state common law prohibiting tortious interference with contractual rights. Specifically, Appellants maintained that through racism and nepotism, Local 392 manipulated the OWL and its exceptions, most notably the name-request provision, favoring white union members over African-Americans. Appellants alleged that even after the EEOC agreement, African-Americans spent more time than whites on the OWL and whites were overwhelmingly chosen for name-requests.
 
 
 15
 On September 1, 1989, Appellees filed a Motion for Summary Judgment. Judge Spiegel dismissed the claims concerning apprenticeship training brought pursuant to Sec. 1981, but refused to dismiss Appellants' other claims.
 
 
 16
 In July 1990, the case was transferred to Judge Carl B. Rubin, and a month later reassigned to Judge Herman J. Weber. After a five week bench trial, on November 21, 1991, Judge Weber issued a 79-page order dismissing Appellants' claims of disparate impact under Title VII.
 
 
 17
 The district court held that Appellees produced a valid business justification for any adverse impact suffered by Appellants. The district court found, as a factual matter, that contractors had always demanded the right to control their work force through a name-request system, and thus were responsible for any disparate impact on the plaintiffs. Judge Weber determined that absent the name-request system, the EEOC settlement could not have been implemented. Consequently, the system was an essential business necessity because it facilitated the EEOC settlement.
 
 
 18
 The district court also dismissed Appellants' claims of disparate treatment under Title VII and Sec. 1981, holding that race was not a significant factor in explaining discrepancies between African-American and white pipe fitters, Appellees exhibited no racial animus toward Appellants, and Appellants' Sec. 1981 claims were time barred.
 
 
 19
 This timely appeal followed.
 
 II.
 
 20
 On appeal, Appellants argue the district court erred in dismissing their Title VII and Sec. 1981 claims. Appellants first challenge the district court's dismissal of their disparate impact claims. Second, Appellants assert the district court erred in dismissing their disparate treatment claims. We address each of Appellants' claims in order below.
 
 A.
 
 21
 On appeal, Appellants present several arguments explaining the district court's error in dismissing their disparate impact claims. Under disparate impact analysis, a facially neutral employment practice may violate of Title VII without evidence of the employer's intent to discriminate. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 646 (1989). To prove disparate impact, plaintiffs must first establish, by a preponderance of evidence, the adverse impact of an employment practice upon members of a minority group. Upon this showing, the burden shifts to defendants to produce evidence of a legitimate business justification for the challenged employment practice. If defendants meet this burden, plaintiffs may rebut such evidence by: 1) showing the defendant's business justification does not significantly serve the legitimate employment goals of the employer; or 2) proving by a preponderance of evidence the availability of alternative practices that would serve the employer's legitimate business needs without the undesirable racial impact. Wards Cove, 490 U.S. at 658-661. In the alternative, defendants may advance affirmative defenses to a Title VII violation, including but not limited to the contested procedure being a bona fide seniority system. Sec. 703(h) of Title VII, 42 U.S.C. Sec. 2000e-2(h).
 
 1.
 
 22
 Appellants assert that the district court erred in finding the name request system to be a bona fide seniority system within the meaning of Sec. 703(h) of Title VII, 42 U.S.C. Sec. 2000e-2(h). Under Sec. 703(h), absent an intention to discriminate, practices which have a disparate impact may be imposed pursuant to a bona fide seniority or merit system. We disagree with the district court's finding that the name-request system was a bona fide seniority system under Sec. 703(h) of Title VII.
 
 
 23
 A seniority system is "bona fide" if it does not arise from discrimination, is maintained free of any illegal purpose, and applies equally to all races and ethnic groups. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 355-56 (1977); Taylor v. Mueller Co., 660 F.2d 1116, 1122-23 (6th Cir.1981), cert. denied, United Transp. Union v. Blankenbaker, 493 U.S. 1074 (1990). The question, however, is not whether the name-request system, as a seniority system, is "bona fide," but rather whether the name-request system is a "seniority system." Under seniority systems, "preferential treatment is dispensed on the basis of some measure of time," and the system "allots to employees ever improving rights and benefits as their relative lengths of pertinent employment increase." California Brewers Assn. v. Bryant, 444 U.S. 598, 605-606 (1980). Name-request eligibility requires journeyperson status, which is attained by completing either apprenticeship training or 1200 hours of work per year for four consecutive years. The name-request system fails to provide pipe fitters "ever improving rights and benefits" as their length of employment increases. First, upon attaining journeyperson status, all pipe fitters enjoy equal eligibility for name-requests, independent of their seniority. Second, length of employment may increase without one attaining the rights and benefits of qualifying for the name-request system. The pipe fitter who has worked 1000 hours per year for 15 years, for a total of 15,000 hours, is not eligible for the name-request system, but has more seniority than those eligible with either apprenticeship training or 1200 working hours for four consecutive years, for a total of only 4800 hours. We find, therefore, that the name-request provision was not a seniority system.
 
 2.
 
 24
 Appellants also assert that the district court erred in concluding that the name-request system was a legitimate business justification allowed under Title VII. First, Appellants argue there is no business justification for name-request provisions because all pipe fitters are competent and could meet employers' legitimate business needs. Second, Appellants assert the court erred in finding that name-request system necessary for the implementation of an EEOC settlement. Because the district court did not err in holding that the request provisions constitute legitimate business justifications necessary for contractor efficiency and the union's service of the contractor, we find it unnecessary to reach Appellants' second claim regarding the EEOC settlement.
 
 
 25
 Upon the establishment of plaintiff's prima facie case of disparate impact, defendants must show a business necessity which justifies the employment practice. Wards Cove, 490 U.S. at 658; Wooden v. Board of Educ., 931 F.2d 376, 379 (6th Cir.1991); Abbott v. Federal Forge, Inc., 912 F.2d 867, 872 (6th Cir.1990). Efficiency may constitute a valid business necessity. Head v. Timken Roller Bearing Co., 486 F.2d 870, 879 (6th Cir.1973); Chrisner v. Complete Auto Transit, Inc., 645 F.2d 1251, 1257 (6th Cir.1981). The name-request, special skills and key person exceptions serve the contractors' legitimate business justification of choosing an efficient work force. Recognizing this necessity, contractors have always demanded the right to control their work force through a name-request system, and maintained the system under the EEOC agreement. The union's survival depends upon relationships with contractors, which would be severed absent the name-request provisions. Consequently, the name-request system is a legitimate business necessity to the union.
 
 
 26
 Because the name-request system is a valid business justification and Appellants have not shown that the name-request system fails to serve legitimate goals of the union or proven the availability of alternative practices that would serve union needs without undesirable racial impact, we find that the district court was correct in dismissing Appellants' disparate impact claims.
 
 3.
 
 27
 Appellants argue that the district court erred in its determination that Local 392 was not liable for disparate impact suffered by African-American union members. A union may be held liable under Title VII for acquiescing in the discriminatory practices of an employer. Farmer v. ARA Services, Inc., 660 F.2d 1096, 1104 (6th Cir.1981). Because a valid business necessity of both the union and contractors has been established, however, Appellants have failed to show a violation of Title VII. Consequently, Local 392 cannot be held liable for a violation which has not been shown to exist.
 
 B.
 
 28
 Appellants also argue that the district court erred in dismissing their disparate treatment claims pursuant to Title VII and Sec. 1981. Specifically, Appellants assert that the district court erroneously concluded Appellees did not discriminate against them in the referral of jobs, by participating in, ratifying and acquiescing in the employers' intentional discrimination, and by creating and maintaining an environment of racial hostility.
 
 1.
 
 29
 Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, this Court may only reverse the District Court's factual findings if they are clearly erroneous. Fed.R.Civ.P. 52(a); Anderson v. City of Bessemer, 470 U.S. 564 (1985); Wrenn v. Gould, 808 F.2d 493, 499 (6th Cir.1987); Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 374 (6th Cir.1984). A finding of intentional discrimination is a finding of fact. City of Bessemer, 470 U.S. at 573; RKO Bottlers, 743 F.2d at 374. Consequently, the clearly erroneous standard governs this Court's review of the district court's finding that Appellees did not intentionally discriminate against Appellants on the basis of race. City of Bessemer, 470 U.S. at 573.
 
 
 30
 To establish disparate treatment, plaintiffs must prove, by a preponderance of the evidence, a prima facie case of discrimination against each defendants.** Upon plaintiffs' success, defendants must then articulate a legitimate nondiscriminatory reason for the contested actions. Should the defendants meet this burden, plaintiffs must prove by a preponderance of the evidence that defendants' stated reasons for the challenged actions were not valid, but were merely pretexts for discrimination. The ultimate burden of persuasion remains at all times with the plaintiffs. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Polk v. Yellow Freight Systems, Inc., 876 F.2d 527, 531 (6th Cir.1989). Both Title VII of the Civil Rights Act and Sec. 1981 follow identical methods to prove disparate treatment. Shah v. General Electric Co., 816 F.2d 264, 267 n. 1 (6th Cir.1987); Daniels v. Board of Educ., 805 F.2d 203, 207 (6th Cir.1986).
 
 
 31
 Although the average African-American member of Local 392 worked fewer hours than the average white member, the district court found that Appellees exhibited no racial animus toward any Appellant and did not discriminate on the basis of race in job referrals. Thus, the district court found that Appellants failed to establish by a preponderance of the evidence any intentional or purposeful discrimination violative of Title VII and Sec. 1981 by Local 392 or Robert Sullivan through either acquiescence or participation in the employers' use of the name-request and special skill provisions.
 
 
 32
 The district court's findings that Appellees did not discriminate on the basis of race are not clearly erroneous. It is not unreasonable that the difference between the jobs and hours worked by African-Americans and whites was caused by factors other than invidious discrimination. The impact of the power plant construction termination caused massive unemployment and devastated all pipe fitters. As a result, the union was even more dependant on satisfying the few remaining contractors who insisted on a name-request system. The Appellants could not have changed this provision without serious labor strife. Additionally, the name-request system benefits both African-American and white union members because they receive preference over transient pipe fitters, who are ineligible for the name-request system.
 
 2.
 
 33
 Appellants assert the district court erred in construing Patterson v. McLean Credit Union, 491 U.S. 164 (1989) to preclude Sec. 1981 claims concerning the referral system. We disagree. Appellants misinterpret the district court's mandate. The district court cited law limiting Sec. 1981 claims to making and enforcing contracts, and correctly found that Appellees did not obstruct Appellants' ability to enforce contracts.
 
 3.
 
 34
 Appellants maintain the district court erred in its determination that Appellants' Sec. 1981 claims were time barred. Because we affirm the district court's determination that Appellants failed to prove a prima facie case of discrimination, we need not address this issue.
 
 C.
 
 35
 Finally, Appellants urge us to retroactively apply the Civil Rights Act of 1991 to this matter. Such a request directly conflicts with our decision in Vogel v. City of Cincinnati, 959 F.2d 594 (6th Cir.1992), holding substantive provisions of the Civil Rights Act of 1991 do not apply retroactively. Following our decision in Vogel, we find the Civil Rights Act of 1991 inapplicable to this case.
 
 III.
 
 36
 For the foregoing reasons, we AFFIRM the order of the Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, Western Division.
 
 
 
 *
 The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 **
 Generally, a plaintiff must show the following to establish a prima facie case of discrimination:
 (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).