Clarence F. JENKINS, Jr., Plaintiff,

v.

**PLUMBERS AND PIPEFITTERS UNION LOCAL NO. 614, and CS3, Inc., Defendants.**

No. 10–2929.

United States District Court, W.D. Tennessee, Western Division.

Sept. 6, 2013.

Clarence F. Jenkins, Jr., Memphis, TN, pro se.

Michael R. Marshall, Evans Petree, PC, Timothy P. Taylor, Godwin Morris Laurenzi & Bloomfield, P.C., Memphis, TN, for Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

SAMUEL H. MAYS, JR., District Judge.

Before the Court is Defendant Plumbers and Pipefitters Union Local No. 614's (the "Union") October 25, 2012 Motion for Summary Judgment. (Mot. for Summ. J., ECF No. 33.) Pro se Plaintiff Clarence F. Jenkins, Jr. ("Jenkins") filed a Response on January 2, 2013. (Resp., ECF No. 40.) On January 22, 2013, the Union replied. (Reply, ECF No. 49.) The Court referred the Union's Motion to United States Magistrate Judge Charmiane G. Claxton on March 27, 2013. (ECF No. 50.) On April 16, 2013, the Magistrate Judge entered a Report and Recommendation (the "Report") recommending that the Union's Motion be granted. (Report, ECF No. 51.) Jenkins objected to the Magistrate Judge's Report on May 1, 2013. (Obj., ECF No. 55.) The Union responded to Jenkins' objection on May 17, 2013. (Resp. to Obj., ECF No. 56.)

For the following reasons, the Court OVERRULES Jenkins' objections and ADOPTS the Magistrate Judge's Report. The Union's Motion for Summary Judgment is GRANTED.

### I. Background

On December 22, 2010, Jenkins filed a pro se Complaint against his employer, CS3, Inc. ("CS3"), and the Union, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

("Title VII"). (Compl., ECF No. 1.)[1] On November 21, 2011, Jenkins filed an Amended Complaint against CS3 and the Union. (Am. Compl., ECF No. 21.)

Jenkins alleges that he is an African-American male who is a "dues paying member" of the Union and who was "working his way through the apprenticeship program." (*Id.* ¶¶ 5, 10). He claims that he was dismissed because of his race and was replaced by an "inexperienced White apprentice" who was then promoted to "journeyman steam fitter/service tech." (*Id.* ¶ 6.) Jenkins alleges that the Union "continues to discriminate against him based on his race" by referring Caucasian members for positions that, based upon the "applicable laws, rules, and by-laws of Local No. 614 should be his employment." (*Id.* ¶ 9.) He claims that the Union has not contacted him in the previous eighteen months about job placement. (*Id.*) Jenkins alleges that he filed a charge against the Union with the Equal Employment Opportunity Commission ("EEOC") claiming retaliation and discrimination on the basis of race (the "Charge"). (*Id.* ¶ 11.)[2] He alleges that he filed the Charge on October 14, 2008, but the Charge is date-stamped as received on December 11, 2008. (*Id.*; Charge, ECF No. 1) The Charge specifically alleges that two Caucasian employees, Charles Minck and Williard Strain, were given job placements instead of Jenkins. (Charge.) The Charge states that Strain was offered two different job assignments and that Jenkins has not been offered any referrals since October 2008. (*Id.*) The Charge states that, when Strain declined an assignment, his name was not moved to the bottom of the assignment list. (*Id.*) The Charge states that Minck was offered a job assignment where Plaintiff was "supposed to have been rehired." (*Id.*) The EEOC issued a Dismissal and Notice of Rights on or about September 26, 2010. (Am. Compl. ¶ 12.)

The Magistrate Judge found that the Union represents Apprentice and Journeymen employees in the plumbing and pipe-fitting industries, and that it uses a "referral system" or "hiring hall" method to assist members in finding employment. (Report 748–49.) Members who are not currently employed are eligible to add their names to the "Out of Work List" to obtain referrals (the "List"). (*Id.* 749.) The List is maintained in chronological order by the date members sign up. (*Id.*) When a contractor contacts the Union with a request for a worker without specific special skills or qualifications, the Union refers members in the order in which they signed the List. (*Id.*) If a contractor requests particular skills or qualifications, the Union refers the first worker on the List with those skills or qualifications. (*Id.*) Contractors may also request a specific member by name, and may reject any member referred by the Union. (*Id.*)

The Magistrate Judge found that Jenkins had been placed through the hiring hall on a number of occasions between 2004 and 2010. (*Id.* 749–50.) Jenkins received an early promotion to Journeyman status on January 12, 2009, which allowed him to work at a higher pay grade. (*Id.*) At the time of the placements Jenkins complains of, he was a Fifth Year Apprentice. (*Id.* 749–50.) Strain was referred for the contractor request to which Jen-

---

1. Jenkins' Complaint also brought claims against an individual defendant, John Jerkins, which have since been dismissed. (Order of Partial Dismissal, ECF No. 7.)

2. The EEOC Charge of Discrimination was filed with Jenkins' initial Complaint. Jenkins' Amended Complaint does not include his EEOC Charge of Discrimination, but he does reference it in his Amended Complaint. (Compl.)

kins objects because Strain was the Fifth Year Apprentice who had been on the List the longest. He was not moved to the bottom of the List after declining the assignment, "but that had become ordinary practice at the Union for all members." (*Id.* (internal citations omitted.)) Minck, the Second Year Apprentice who had been on the List longest, was referred for the contractor request to which Jenkins objects because the contractor specified that its budget could only cover the pay grade of a First or Second Year Apprentice. (*Id.* 749–50.)

The Magistrate Judge also found that the Union had provided statistics showing the percentage of referrals for African-American members in 2008, 2009, 2010, and 2011. (*Id.* 750.) In 2008 African-Americans were 8% of membership and received 23% of referrals, in 2009 they were 10% of membership and received 17% of referrals, in 2010 they were 10% of membership and received 15% of referrals, and in 2011 they were 10% of membership and received 11% of referrals. (*Id.*)

The Magistrate Judge's proposed conclusions of law are as follows: Jenkins has not alleged direct discrimination on the basis of race and there is no evidence in the record that race is a motivating factor in Union referrals. (*Id.* 751–52.) Jenkins cannot state a prima facie case of discrimination based on circumstantial evidence because he has not established that there is a genuine issue of material fact about whether he suffered an adverse employment action. (*Id.* 752–53.) The Union's failure to move Strain to the bottom of the List cannot constitute an adverse employment action because, even if it was improper, Jenkins was employed at the time Strain declined the Union's referral and was therefore not on the List. (*Id.* 753.) Because Jenkins was employed at the time of the Union's alleged preferential treat-

ment of Strain and Minck, he was not qualified for the positions he sought because he was not eligible to be referred. (*Id.* 753–54.) There is no evidence in the record to support Jenkins' contention that he was treated differently than similarly situated non-minority members. (*Id.*) The evidence supports a conclusion that the Union's hiring hall operated on set procedures that were applied equally to all members and referrals. (*Id.*)

Jenkins objects to the Magistrate Judge's recommendation on three grounds: (1) it "disregards relevant and admissible data pertaining to the status of African-American Union members"; (2) it "dismisses as inconsequential the fact that plaintiff has not received a referral from defendant since June 2010 while using a series of steady referrals as dispositive evidence"; and (3) it is "clearly erroneous and contrary to law" because "evidence and all justifiable inferences based on facts must be viewed in a light most favorable to the non-moving party." (Obj. 1.)

## II. Jurisdiction

Jenkins brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The Court has federal question jurisdiction under 28 U.S.C. § 1331.

## III. Standard of Review

 A "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The district court need not "review ... a [magistrate judge's] factual or legal conclusions [ ] under a de novo or any other standard, when

neither party objects to those findings.'" *Satkiewicz v. Michigan,* No. 2:11–cv–14370, 2012 WL 3779177, at *1, 2012 U.S. Dist. LEXIS 124403, at *3 (E.D.Mich. Aug. 31, 2012) (quoting *Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985)). The Supreme Court has "expressly concluded that a district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed." *United States v. Maness,* No. 10–20348, 2012 WL 2577528, at *1, 2012 U.S. Dist. LEXIS 92238, at *2 (W.D.Tenn. July 3, 2012) (citing *Arn,* 474 U.S. at 151, 106 S.Ct. 466). Otherwise, a district court would be forced "to review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report . . . . [which] would be an inefficient use of judicial resources." *Id.* (internal citations omitted); *accord Javaherpour v. United States,* 315 Fed.Appx. 505, 509 (6th Cir.2009).

## IV. Analysis

Under Rule 56 of the Federal Rules of Civil Procedure, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. Fed.R.Civ.P. 56(c)(1); *Asbury v. Teodosio,* 412 Fed. Appx. 786, 791 (6th Cir.2011) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. Fed.R.Civ.P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Wasek v. Arrow Energy Servs.,* 682 F.3d 463, 467 (6th Cir.2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Phelps v. State Farm Mut. Auto. Ins. Co.,* 680 F.3d 725, 735 (6th Cir.2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. *See Beckett v. Ford,* 384 Fed.Appx. 435, 443 (6th Cir.2010) (citing *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548). Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in his favor." *Stalbosky v. Belew,* 205 F.3d 890, 895 (6th Cir.2000) (internal citations omitted); *see* Fed.R.Civ.P. 56(c)(1). The court does not have the duty to search the record for such evidence. *See* Fed. R.Civ.P. 56(c)(3); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989). The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor. Fed.R.Civ.P. 56(c)(1); *InterRoyal Corp.,* 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." *FDIC v. Jeff Miller Stables,* 573 F.3d 289, 294 (6th Cir.2009) (internal quotation marks and citations omitted).

The Magistrate Judge recommended that the Court grant the Union's October 25, 2012 Motion for Summary Judgment, filed in opposition to Jenkins' Title VII claim of racial discrimination. (Report 754.) Jenkins has made three objections to the Magistrate Judge's conclusion that Union is entitled to summary judgment. (Obj. 1.) The Court ADOPTS those findings of fact and conclusions of law to which no objection has been made. *Maness*, 2012 WL 2577528, at *1, 2012 U.S. Dist. LEXIS 92238, at *2 (citing *Arn*, 474 U.S. at 151, 106 S.Ct. 466).

██ Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). A Title VII plaintiff may establish a case of unlawful discrimination through direct or circumstantial evidence. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir.2012). The use of circumstantial evidence is important because direct evidence of discrimination is rarely available. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). The plaintiff need only provide one form of evidence or the other, not both. *Id.* at 348–49.

██ " 'Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.' " *Ondricko*, 689 F.3d at 649 (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)). " [O]nce a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not

been motivated by impermissible discrimination.' " *Id.* (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

██ "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003) (en banc) (citing *Kline*, 128 F.3d at 348). Title VII claims brought under a theory of circumstantial evidence are analyzed under the burden-shifting framework first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–02, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, the complainant must carry the initial burden of establishing a prima facie case of discrimination by his or her employer. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir.2004). To make out a prima facie case of race discrimination based on a union's failure to refer for employment, the plaintiff must demonstrate by a preponderance of the evidence "(1) membership in the protected class; (2) that he or she suffered from an adverse action; (3) that he or she was qualified for the position; and (4) that he or she was treated differently from similarly situated members of the unprotected class." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 402–03 (6th Cir. 1999); *see also Herron v. Int'l Ass'n of Bridge Workers Local Union 25*, No. 96–1335, 1998 WL 45483, *6–7, 1998 U.S.App. LEXIS 1322, *18–22 (6th Cir. Jan. 27, 1998).

██ If the plaintiff successfully makes out a prima facie case, a presump-

tion of unlawful discrimination arises against the employer, who then bears the burden of articulating " 'some legitimate, non-discriminatory reason for the employee's rejection.' " *DiCarlo,* 358 F.3d at 414 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). " '[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Id.* at 414–15. At the motion for summary judgment stage, "a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir.2000).

The Magistrate Judge has concluded that Jenkins cannot demonstrate a genuine dispute for trial. Because Jenkins does not allege direct evidence, the Court analyzes his objections under the *McDonnell Douglas* burden-shifting framework.

Jenkins argues that the Magistrate Judge disregarded statistics[3] indicating racial discrimination. (Obj. 1, 2.) The Court understands this argument to address the fourth element of a discrimination case.

■■■ " 'To make a comparison of a[ ] plaintiff's treatment to that of non-minority employees, the plaintiff must show that the [compared-to non-minority employees] are similarly situated in all respects.' " *Bryant v. Rolling Hills Hosp., LLC,* 836 F.Supp.2d 591, 617 (M.D.Tenn.2011) (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992)). This means that the individuals with whom the plaintiff seeks

to compare his treatment must have engaged in the same conduct as the plaintiff " 'without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.' " *Id.* The plaintiff is not required, however, "to demonstrate an exact correlation between himself and others similarly situated; rather, he [must] show [ ] that he and his proposed comparators [are] similar in all relevant respects." *Bobo v. United Parcel Serv., Inc.,* 665 F.3d 741, 751 (6th Cir.2012) (citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998)).

■■■ The statistics Jenkins appears to reference were submitted by the Union and incorporated into the Magistrate Judge's findings of fact. (Report 750.) The statistics show that:

> In 2008, African–American members constituted 8% of the Union's membership and received 23% of referrals through the hiring hall. In 2009, African–Americans constituted 10% of the Union's membership and received 17% of the referrals through the hiring hall. In 2010, African–Americans constituted 10% of the Union's membership and received 15% of the referrals through the hiring hall. In 2011, African–Americans constituted 10% of the Union's membership and received 11% of the referrals through the hiring hall.

(*Id.*) Jenkins asserts that these data constitute circumstantial evidence of discrimination against African–Americans, including Jenkins. (Obj. 2.) According to the unchallenged findings of the Magistrate Judge, however, the Union hiring hall procedures contemplate a number of variables

---

**3.** "Appropriate statistical data showing an employer's pattern of conduct towards a protected class as a group can ... create an inference that a defendant discriminated against individual members of the class." *Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1466 (6th Cir.1990).

not reflected in the data. (Report 749.) Although he need not "demonstrate an exact correlation" between himself and his comparators, Jenkins is required to show that they are "similar in all relevant respects." *Ercegovich,* 154 F.3d at 352. The statistics on which Jenkins relies do not provide any information about members' classifications, years of experience, or areas of specialty. The Union has six classifications of workers: Journeymen and First, Second, Third, Fourth, and Fifth Year Apprentices. (Report 749.) Each classification corresponds to different skills and qualifications. (*Id.*) Each classification also corresponds to a different pay grade. (*Id.*) Contractors requesting workers from the hiring hall submit requests detailing the characteristics of the workers they desire. (*Id.*) The Union, in turn, refers not simply the first member on the List but the first member on the List who possesses the qualifications required for a given job. (*Id.*) The qualifications of a given member are relevant considerations in the referral process. The data on which Jenkins relies do not account for these factors sufficiently.

Even if the data suggested disparate treatment of African–American members, it would be impossible to discern whether the difference was on account of race or resulted from employer preferences for members who possessed certain professional characteristics. *See Blair v. Henry Filters,* 505 F.3d 517, 530 n. 12 (6th Cir. 2007) (data used as circumstantial evidence are of doubtful relevance to age discrimination claims because the "average age" statistic does not separate employees who retire or resign from those who are terminated); *Hilbert v. Ohio Dep't of Rehab. & Corr.,* 121 Fed.Appx. 104, 110 (6th Cir. 2005) (data used as both circumstantial and direct evidence are insufficient, taken alone, to make out prima facie case of race discrimination because the data do not eliminate any of the several other possible explanations for the disparity in treatment).

Assuming arguendo that Jenkins' comparators are sufficiently similarly situated, the statistics themselves reveal that African–American union members have consistently received a higher percentage of referrals than non-African-American members. The statistics weigh against Jenkins' claim. Without more, Jenkins cannot establish the fourth element of a prima facie case of race discrimination. *See Kraemer v. Luttrell,* 189 Fed.Appx. 361, 368 n. 8 (6th Cir.2006) (an African–American plaintiff could not establish the comparator element in a denial of promotion claim without providing more circumstantial evidence because the only evidence relied on by plaintiff was data showing a higher percentage of African–Americans were promoted than non-African-Americans).

Jenkins objects to the Magistrate Judge's conclusion that Jenkins' eighteen months on the List without receiving a referral do not constitute an adverse employment action. (Obj. 1, 3.) The Court understands this argument to address the second and third elements of prima facie discrimination. Jenkins does not cite any case to support his argument.

 In the context of a union referral system, a plaintiff satisfies the adverse employment element by showing "that [he was] not referred despite [his] qualifications." *Herron,* 1998 WL 45483, *6–7, 1998 U.S.App. LEXIS 1322, *18–22. Although Jenkins claims adverse action because he was not referred for over eighteen months while his name was on the List, he has not provided any evidence that jobs became available during that time or, if so, whether he was qualified for those jobs. Jenkins cannot establish the second

or third element of a prima facie case of race discrimination.

■ Jenkins argues that the Magistrate Judge's Report is "clearly erroneous and contrary to law in that the evidence and justifiable inferences based on facts must be viewed in a light most favorable to the non-moving party." (Obj. 1.) Although the rule of law Jenkins cites is firmly established in the Sixth Circuit, *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir.2001), he does not expand on his argument by specifying what evidence and justifiable inferences were not viewed in a light most favorable to him. "Failure to identify specific concerns with a magistrate judge's report results in treatment of a party's objections as a general objection." *McCready v. Kamminga,* 113 Fed. Appx. 47, 49 (6th Cir.2004). A general objection "is considered the equivalent of failing to object entirely." *Id.* (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir.1991)). Because Jenkins' objection is a general objection, it is not well taken.

Jenkins has not demonstrated that he was treated differently than similarly situated non-protected employees. He has not demonstrated the he suffered an adverse employment action or that he was qualified for any referrals that might have arisen during his relevant eighteen months on the List. Jenkins has failed to establish a prima facie case of employment discrimination as a matter of law. His objections do not set forth specific facts showing that there is a genuine dispute for trial. Adopting the Magistrate Judge's Report is consistent with the policies underlying 28 U.S.C. § 636, specifically judicial economy and protecting against the "functions of the district court [being] effectively dupli-

cated as both the magistrate and the district court perform identical tasks." *Howard,* 932 F.2d at 509.

## V. Conclusion

For the foregoing reasons, Jenkins' objections are OVERRULED. The Magistrate Judge's Report and Recommendation is ADOPTED. The Union's Motion for Summary Judgment is GRANTED.

## REPORT AND RECOMMENDATION ON DEFENDANT PLUMBERS AND PIPEFITTERS UNION, LOCAL NO. 614'S MOTION FOR SUMMARY JUDGMENT

CHARMIANE G. CLAXTON, United States Magistrate Judge.

Before the Court is Defendant Plumbers and Pipefitters Local No. 614's ("Union" or "Defendant") Motion for Summary Judgment. (Docket Entry "D.E." # 33). The instant motion was referred to the United States Magistrate Judge for Report and Recommendation. (D.E.# 50). For the reasons set forth herein, the Magistrate Judge recommends that the Union's Motion for Summary Judgment be GRANTED.

## I. Background

On December 22, 2010, Plaintiff Clarence F. Jenkins, Jr. filed a pro se Complaint against his employer, CS3, Inc. ("CS3"), and the Union alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 *et seq.* ("Title VII").[1] On November 21, 2011, Plaintiff filed a pro se Amended Complaint against CS3 and the Union, which continued to allege violations of Title VII.

---

**1.** Plaintiff's Complaint also brought claims against an individual defendant, John Jerkins, which have since been dismissed.

Specifically, Plaintiff alleges that he is an African–American male who is a "dues paying member" of the Union and was "working his way through the apprenticeship program." (Am. Compl. ¶¶ 5, 10). Plaintiff claims that he was dismissed because of his race and was replaced by an "inexperienced White apprentice" who was then promoted to "journeyman steam fitter/service tech." (*Id.* ¶ 6). Plaintiff alleges that the Union "continues to discriminate against him based on his race" by referring Caucasian members for positions that, based upon the "applicable laws, rules and by-laws of Local No. 614 should be his employment." (*Id.* ¶ 9). Plaintiff claims that the Union has not contacted him in the previous eighteen months regarding job placement. (*Id.*) As a result, Plaintiff alleges that he filed a Charge against the Union with the Equal Employment Opportunity Commission ("EEOC") claiming retaliation and discrimination on the basis of race.[2] (*Id.* ¶ 11). Plaintiff alleges that he filed the EEOC Charge on October 14, 2008, (*Id.* ¶ 11), but the EEOC Charge is date-stamped as being received December 11, 2008, (Compl., Exh. 4). The EEOC Charge specifically alleges that two Caucasian employees, Charles Minck and Williard Strain, were given job placements instead of Plaintiff. (Compl., Exh. 4). The EEOC Charge states that Strain was offered two different job assignments and that Plaintiff has not been offered any

referrals since October, 2008. (*Id.*) The EEOC Charge states that, when Strain declined an assignment, his name was not moved to the bottom of the assignment list. (*Id.*) The EEOC Charge states that Minck was offered a job assignment where Plaintiff was "supposed to have been rehired." (*Id.*) The EEOC issued a Dismissal and Notice of Rights on or about September 26, 2010. (Compl., Exh. 2)

## II. Jurisdiction

This case alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 *et seq.* The District Court has original jurisdiction to adjudicate federal claims under 28 U.S.C. § 1331.

## III. Proposed Findings of Fact [3]

The Union is a labor organization that represents employees working as Journeymen and Apprentices in the pipefitting industry and jurisdiction of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO. (Affidavit of Robert E. Sproles, "Sproles Aff." ¶ 3). The Union serves as the collective bargaining agent for such employees regarding the terms and conditions of their employment. (*Id.*) The Union represents six classifications of workers in the industry: Journeymen; and First, Second, Third, Fourth, and Fifth Year Appren-

---

**2.** Plaintiff's Amended Complaint does not include his EEOC Charge of Discrimination, but it does reference it in his Amended Complaint. The EEOC Charge of Discrimination is part of the record, as it was filed with Plaintiff's initial Complaint.

**3.** The Union has filed a Statement of Undisputed Facts in Support of its Motion for Summary Judgment, as required by Rule 56(a) of the Local Rules. However, Plaintiff has failed to respond to the Union's Statement of Undisputed Facts, as required by Rule 56(b), by either agreeing that the fact is undisputed or

by demonstrating that the fact is disputed by a specific citation to evidence in the record. Plaintiff has also not filed any additional disputed material facts of his own or provided any evidence in opposition to the Union's instant motion. Instead, Plaintiff has only recited portions of the Union's Statement of Disputed Facts, relied on the Union's exhibits, and made references to his own facts that are not supported by any evidence in the record. Accordingly, the Union's Statement of Undisputed Facts will be deemed to be undisputed.

tices. (*Id.* ¶ 6). Each classification has different qualifications and skills and receives different rates of pay under the collective bargaining agreement. (*Id.*)

To assist members with finding employment, the Union operates a "referral system" or "hiring hall." (*Id.* ¶ 4). In addition to helping its members, the purpose of the hiring hall is to provide construction employers with access to competent employees within the industry and to insure a fair distribution of work among the workers they represent. (*Id.* ¶ 5). The hiring hall allows workers to register themselves as available for referral by signing the "Out of Work List" maintained by the Union hall. (*Id.* ¶ 7). Registrants on the Out of Work List are listed in chronological order by the dates on which they signed the list. (*Id.*) Only workers who are unemployed or not employed in the pipefitting industry are eligible for referral. (*Id.*)

Contractors seeking workers may contact the Union hall and make requests for workers from the Out of Work list. (*Id.* ¶ 8). There are several options for contractors to make such requests. (*Id.*) A general request seeks a specific number of workers in a particular classification. (*Id.*) If a contractor does not request workers with any special skills or qualifications, the Union refers registrants in the order they signed the Out of Work List. (*Id.*) If a contractor does request workers with special skills or qualifications, such as plumbing, welding, or drafting, the Union will refer the first worker in the requested classification on the Out of Work List that has those skills or qualifications. (*Id.* ¶ 9). Finally, a contractor may request a specific worker by name, in which case the Union will refer that registrant regardless of his or her place on the Out of Work List. (*Id.* ¶ 10). Despite these request

procedures, a contractor may reject any member referred by the Union. (*Id.*).

It is commonplace for Apprentices and Journeymen to work temporary contract employment for various contractors through the hiring hall. (Deposition of Clarence F. Jenkins, "Jenkins Dep.," at 121:5–24). Members are often hired for a project and laid off when the project is complete. (Jenkins Dep. at 20–24). At that time, the members return to the hiring hall for placement on the Out of Work List. (*Id.* at 122:1–13). Plaintiffs contract employment has followed this pattern, demonstrating that he has been placed through the hiring hall with the following contractors during the following periods of time: Gipson Mechanical from April 1, 2004 to June 24, 2004; Trane Commercial Services from June 25, 2004 to September 5, 2005; Craft Mechanical from September 6, 2005 to October 2, 2005; Sibley Solutions from October 3, 2005 to November 11, 2005; CS3, Inc. from December 31, 2005 to June 15, 2008; Mechanical Specialty, Inc. from June 16, 2008 to September 26, 2008; URS–Dupont from September 27, 2008 to January 12, 2009; Morgan & Thornburg from January 13, 2009 to October 30, 2009; URS–Lagoon Creek from November 18, 2009 to February 5, 2010; and, URS–Lagoon Creek from February 24, 2010 to June 4, 2010. (Sproles Aff. ¶ 13; Jenkins Dep. at 45–46 & Exh. 2). Plaintiff also received early promotion to Journeyman, on January 12, 2009, which allowed him to begin to work at a higher pay at an earlier date. (Jenkins Dep. at 92:21–24, 93:1–9).

With respect to the placement of Strain, he was the Fifth Year Apprentice whose name had been on the Out of Work List the longest, and thus he was referred for the contractor request. (Sproles Aff. ¶ 15). Further, the Union states as follows: "Strain was not moved to the bottom

of the list after declining another job assignment, but that had become ordinary practice at the Union for all members." (Sproles Aff. ¶ 16).[4]

With respect to the placement of Mincks, the contractor specified that the customer's budget would only allow for pay for a First or Second Year Apprentice. (*Id.* ¶ 17). Mincks was the next Second Year Apprentice on the Out of Work List, and he was referred. (*Id.*). Plaintiff, as a Fifth Year Apprentice at that time, had a pay rate of nearly $9.00 per hour higher than a Second Year Apprentice and was overqualified for this contractor's needs. (*Id.*).

In addition to the Union's position that it has treated Plaintiff fairly and has not discriminated against him on the basis of his race, the Union has additionally provided statistics on its overall treatment of African–American members. In 2008, African–American members constituted 8% of the Union's membership and received 23% of referrals through the hiring hall. (Sproles Aff. ¶ 12). In 2009, African–Americans constituted 10% of the Union's membership and received 17% of the referrals through the hiring hall. (*Id.*). In 2010, African–Americans constituted 10% of the Union's membership and received 15% of the referrals through the hiring hall. (*Id.*). In 2011, African–Americans constituted 10% of the Union's membership and received 11% of the referrals through the hiring hall. (*Id.*).

### IV. Proposed Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thaddeus–X v. Blatter*, 175 F.3d 378, 400 (6th Cir.1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir.2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed.1998).

---

**4.** It is not clear to the Court from the phrasing of this statement whether the ordinary practice had become to place members at the bottom of the list if they declined an assignment or whether the ordinary practice had become not to place members at the bottom of the list if they declined an assignment.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## V. Proposed Conclusions of Law

■ The sole issue presented in the instant motion is whether a genuine issue of material fact exists as to Plaintiff's claim of racial discrimination in violation of Title VII. Under Title VII, discrimination of the basis of "race, color, religion, sex, or national origin" constitutes an unlawful employment practice. 42 U.S.C. § 2000e–2(a). A plaintiff may establish a claim of disparate treatment[5] based upon race either by introducing direct evidence of discrimination or by proving circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive;

a plaintiff need only prove one or the other, not both." *Id.*

■ Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999). To successfully pursue a direct-discrimination claim, the evidence must establish, *without any inferences or presumptions*, that discriminatory motives caused the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000); *see also Brack v. Shoney's, Inc.*, 249 F.Supp.2d 938, 947 (W.D.Tenn.2003). If the plaintiff introduces evidence of an adverse employment action on the basis of his protected status, the burden of persuasion shifts to the employer to prove that it would have taken the adverse employment action even had it not been motivated by discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir.1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), applies to determine if the con-

---

**5.** Plaintiff's Response to Defendant's Motion for Summary Judgment additionally argues that the Union's employment practices had a disparate impact upon African–American members. However, Plaintiff made no allegations of disparate impact in his Amended Complaint, which must be timely plead. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (concluding that the failure to "timely pursue" a

disparate-impact claim prohibits its consideration). Further, Plaintiff's Deposition makes abundantly clear that his allegations only pertain to the Union's treatment of him, not to the treatment of any other African–American members. (Jenkins Dep. at 70:2). Thus, the Magistrate Judge recommends that the District Court disregard Plaintiff's arguments regarding that claim that he has not properly plead.

duct violated Title VII. First, a plaintiff must establish a prima facie case of discrimination, which requires as follows: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir.2004). Plaintiff must establish his prima facie case by a preponderance of the evidence. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089.

If plaintiff establishes the prima facie case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* Plaintiff must meet this burden by a preponderance of the evidence. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir.1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

With respect to the direct evidence approach, Plaintiff has not alleged direct discrimination on the basis of race, and there is no evidence in the record that directly demonstrates that race was a motivating factor in the Union's hiring hall referrals. On the contrary, the Union has provided a detailed explanation of its hiring hall system and of how referrals are granted based upon skill level, length of time on the hiring list, and specific requests.

With respect to the circumstantial evidence approach, Plaintiff must first establish the elements of the prima facie case. Although there is no dispute that Plaintiff is African–American and is thus a member of a protected class, Plaintiff argues that there is a genuine issue of material fact as to the remaining factors. Defendants assert that the record does not support his position.

The first element of Plaintiff's prima facie case is whether he suffered an adverse employment action. In the context of job applications, a plaintiff must show that he "applied for and was qualified for a job for which the employer was seeking applicants." *Shirley Rosser v. Pipe Fitters Local 392*, No. 92–3016, 1993 WL 498220, at *6 n. ** (6th Cir. Dec. 2, 1993). Plaintiff did not apply for a certain job that was seeking applicants; instead, he placed his name on the Out of Work List through the Union. The undisputed evidence in the record is that the hiring hall has set operating procedures that take no account of the member's race. Further, there is no evidence in the record that the hiring hall constituted a *guarantee* of employment at any time; instead, it operated to match skills of members with needs of contractors while prioritizing assigning work to those members that had been out of work for the longest period of time.

Plaintiff argues that the fact that he has signed the Out of Work List and had not received a referral in eighteen months is sufficient to establish that a genuine issue of material fact exists as to whether he has suffered an adverse employment action. The Court concludes that it is not. Merely

because Plaintiff had not been the highest priority employee with a certain skill level in an eighteen-month period of time does not constitute an adverse employment action. Throughout this period, Plaintiff has been given the benefit of using the hiring hall system to assist him with obtaining employment. Although this benefit has not yet materialized into a referral, Plaintiff has remained on the list, constantly providing him with an opportunity for a referral. There is nothing in this process that can be deemed adverse to Plaintiff, even though he may wish that he could have obtained a quicker referral.

■ The only other fact in the instant case that could arguably be adverse to Plaintiff is that Sprain apparently declined a referral at some point and his name was not moved to the bottom of the Out of Work List. As stated above, the Court is not clear whether the ordinary practice of the Union is to move a name to the bottom of the list if they decline an assignment or not. In either event, even if the Union's ordinary practice is to move a name to the bottom of the list, Plaintiff has not established that a genuine issue of material fact exists as to whether that the failure to do so as to Strain constitutes an adverse employment action. Specifically, Plaintiff asserts that the EEOC Charge alleging racial discrimination against the Union was filed on October 14, 2008; the EEOC Charge itself is date-stamped as being received December 11, 2008. Throughout this time period, Plaintiff was consistently employed by the Union's hiring hall referral to URS–Dupont throughout this time. Thus, even if the Union erred in not placing Strain's name at the bottom of the referral list after he declined an assignment, it could not have impacted Plaintiff's employment on December 1, 2008 when the Union referred Strain because Plaintiff was employed on that date. The Union's

hiring hall specifically prohibits any employed members from receiving referrals. Further, once Strain was referred, his name would have been removed from the Out of Work List, and there are no allegations to the contrary. Thus, even if his name had temporarily been higher on the list than the Union's ordinary practice should have permitted it to be, it was now removed and could not have impacted Plaintiff's referrals after this date.

While Plaintiff's failure to establish an adverse employment action is sufficient to require summary judgment in Defendant's favor, the Court will briefly address the remaining two elements of Plaintiff's prima facie case. With respect to whether Plaintiff was qualified for the positions he sought, the record reflects that Plaintiff was employed consistently with other contractors at the time he alleges Minck and Strain were referred. Thus, according to the Union's hiring hall rules, Plaintiff was not eligible to be referred, as they only refer those who are unemployed or who are not employed in the pipefitting industry. In fact, Plaintiff's name should not have even been on the Out of Work List at this time, and there is no allegation that it was, as he was not out of work. Not only was Plaintiff not eligible to be referred on these dates, but as to Mincks, a First or Second Year Apprentice was requested for that position, and Plaintiff was a Fifth Year Apprentice whose hourly wages were nearly $9.00 per hour higher than that of Mincks. Thus, even had Plaintiff been unemployed during this time period, which he was not, he would not have been eligible to be referred instead of Mincks regardless due to the specific request and needs of the contractor.

Finally, with respect to whether Plaintiff was treated differently than similarly situated non-minority members, there is no evidence in the record that this is the case.

754

Instead, all evidence in the record demonstrates that the Union operated its hiring hall according to set protocols and that they were followed in the referrals of all members, including the referrals of Sprain and Mincks, with the harmless exception of the potential error regarding Sprain's temporarily inflated position on the list.

## VI. Conclusion

For the reasons set forth herein, the Magistrate Judge recommends that Defendant Plumbers and Pipefitters Local No. 614's Motion for Summary Judgment (D.E.# 33) be GRANTED.

DATED this 16th day of April, 2013.